(C. D. 391)

Seaboard Lumber Sales Co., Ltd. *v.* United States

United States Customs Court, First Division

(Decided October 31, 1940)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

Before Brown and Walker, Judges

Walker, Judge: The plaintiff herein imported planed lumber from Canada into the United States on August 1, 1938. The lumber was assessed with duty by the collector of customs at the rate of 50 cents per thousand feet, board measure, under the provisions of paragraph 401 of the Tariff Act of 1930 as amended by the Canadian Trade

Agreement reported as T. D. 48033. In addition thereto, a tax or duty at the rate of $1.50 per thousand feet, board measure, was imposed by the collector under the provisions of section 601 (c) (6) of the Revenue Act of 1932 as amended by the provisions of the Canadian Trade Agreement referred to.

The collector of customs, in assessing the duty under the Tariff Act of 1930 and also in imposing the tax under the Revenue Act of 1932, took as the basis therefor the number of board feet which the lumber had contained prior to planing, that is to say, such assessment and imposition were made on the basis of the board measurement of the lumber as it was when rough-sawed and not as it was when it was imported.

Authority for such practice, so far as the assessment of duty under the Tariff Act of 1930 is concerned, is found in paragraph 401 thereof which contains a clause that—

in estimating board measure for the purposes of this paragraph no deduction shall be made on account of planing, tonguing, and grooving * * *.

No question is raised as to the validity of the collector's action with respect to the assessment of duty under paragraph 401, *supra*, but the plaintiff filed this suit to recover the amount of tax collected under the provisions of the Revenue Act of 1932 on the difference between the number of board feet of planed lumber actually imported, i. e., 1,900,399 feet, and the number of board feet of rough-sawed lumber from which it was made and which formed the basis for the imposition of the tax, i. e., 2,564,098 feet, claiming that there was no warrant in law for the imposition of the tax under the Revenue Act of 1932 on any other basis than the number of board feet of lumber actually imported.

Section 601 (c) of the Revenue Act, *supra*, as it was approved and became law, so far as pertinent, reads as follows:

(c) There is hereby imposed upon the following articles * * * imported into the United States, a tax at the rates hereinafter set forth, to be paid by the * * * importer:

. *       *       *       *       *       *       *

(6) Lumber, rough, or planed or dressed on one or more sides, except flooring made of maple (except Japanese maple), birch, and beech, $3 per thousand feet, board measure * * *.

Shortly after the Revenue Act of 1932 went into effect the question was put into litigation as to whether the tax imposed thereby should be collected on planed or dressed lumber on the same basis as were duties under paragraph 401 of the Tariff Act of 1930, i. e., with no allowance for planing, tonguing, or grooving. On October 28, 1935, this court decided the issue in favor of the importer. *F. W. Myers & Co., Inc.* v. *United States*, T. D. 47964.

On November 15, 1935, the United States and the Dominion of Canada entered into a trade agreement which provided, *inter alia*, as follows:

### ARTICLE IV

Articles the growth, produce or manufacture of Canada, enumerated and described in Schedule II annexed to this Agreement, shall, on their importation into the United States of America, be exempt from ordinary customs duties in excess of those set forth and provided for in the said Schedule. The said articles shall also be exempt from all other duties, taxes, fees, charges, or exactions, imposed on or in connection with importation, in excess of those imposed on the day of the signature of this Agreement or required to be imposed thereafter under laws of the United States of America in force on the day of the signature of this Agreement.

Schedule II and the notes included therein shall have full force and effect as integral parts of this Agreement.

\*     \*     \*     \*     \*     \*     \*

### Schedule II

\*     \*     \*     \*     \*     \*     \*

| Revenue Act of 1932, section | Description of article | Rate of import tax |
|---|---|---|
| 601 (c) (6) | Lumber, rough, or planed or dressed on one or more sides, except flooring made of maple (except Japanese maple), birch, and beech \* \* \*. | $1.50 per thousand feet, board measure. |

On November 2, 1936, the Court of Customs and Patent Appeals rendered its decision in the case of *United States* v. *F. W. Myers & Co., Inc.*, 24 C. C. P. A. 156, T. D. 48640, an appeal taken from the decision of this court in T. D. 47964, *supra*, and the appellate court held that—

For the purposes of section 601 (c) (6) of the Revenue Act of 1932 the measurement of certain spruce lumber, part of which was dressed or planed on one side only, part of which was dressed or planed on one side and on one edge, should be according to the actual board measure content thereof, and the trial court reached the right conclusion in so holding.

Another case on the same issue was tried before this court, however, and on April 18, 1938, this court rendered its decision in *F. W. Myers & Co., Inc.* v. *United States*, T. D. 49530, wherein, after citing the former *Myers* case, it was held—

that by the omission of the words "no allowance shall be made for planing, tonguing, and grooving" from the provisions of section 601 (c) (6), *supra*, which language in substance is found in all prior tariff acts as far back as 1890 wherein lumber was made dutiable at a specific rate based upon its board measurement, Congress plainly manifested its intent that the tax imposed thereby should be assessed on imported lumber on the basis of its condition as imported, and not on the basis of its condition as it was in the country of exportation before dressing.

On May 26, 1938, the Revenue Act of 1938 became law. Section 704 thereof, so far as pertinent, reads as follows:

SEC. 704. AMENDMENTS TO TAX ON LUMBER.

(a) Section 601 (c) (6) of the Revenue Act of 1932 is further amended by adding at the end thereof the following: "In determining board measure for the purposes of this paragraph no deduction shall be made on account of planing, tonguing, and grooving. As used in this paragraph, the term 'lumber' includes sawed timber."

(b) Each sentence of the amendment made by subsection (a) shall become effective (1) on the sixtieth day after the date of the enactment of this Act unless in conflict with any international obligation of the United States or (2) if so in conflict, then on the termination of such obligation otherwise than in connection with the undertaking by the United States of a new obligation which continues such conflict.

In T. D. 49662, promulgated July 27, 1938, the Acting Commissioner of Customs ruled that the amendment was not in conflict with the Canadian Trade Agreement of 1935 (T. D. 48033, *supra*), and that assessment should be made on planed lumber on the basis of the rough measure thereof before planing. The merchandise at bar was imported August 1, 1938, and assessment was made in accordance with the foregoing instructions.

The issue is therefore resolved into the question of whether the change in the method of imposition of the tax brought about by the first sentence in section 704 (a) of the Revenue Act of 1938 was in conflict with the obligation of the United States expressed in article IV of the Canadian Trade Agreement of 1935. We are of the opinion that it was.

Government counsel in the brief filed on behalf of the defendant contends that the United States and Canada intended to recognize and leave unaffected the method of computing board measure without deduction which had theretofore been used by American collectors of customs in imposing the tax on lumber under the Revenue Act of 1932. In determining the intent of parties to trade agreements, as of those to ordinary contracts, we must first look to what the parties said as expressed in the agreement. The parties to the agreement in question adopted the language of section 601 (c) (6) of the Revenue Act of 1932 in describing the merchandise to be covered by the agreement and in fixing the rate of tax to be imposed thereon. That language had already been the subject of construction by this court on October 28, 1935, and it had been held that the practice of collectors of customs to impose the tax under the revenue act on planed or dressed lumber on the basis of its condition when rough-sawed and before such planing or dressing was without warrant in law. *Myers v. United States*, T. D. 47964, *supra*. The trade agreement was entered into 18 days later, on November 15, 1935, and at that time at least

the American contracting party presumably knew of the decision rendered on the point.

It is obvious that one of the specific purposes of the trade agreement was to reduce the tax or duty imposed on lumber under the Revenue Act of 1932. Certainly, therefore, the contracting parties intended to give the language of the agreement the same meaning as the language of the statute embodied in it; otherwise they would have failed in their purpose.

In article IV of the agreement the following appears:

The said articles shall also be exempt from all other duties, taxes, fees, charges, or exactions, imposed on or in connection with importation, in excess of those imposed on the day of the signature of this Agreement or required to be imposed thereafter under laws of the United States of America in force on the day of the signature of this Agreement.

There can be no question but that collection of the tax here in question on the basis of the condition of the lumber prior to planing or dressing would, in fact, increase the tax imposed, whether considered from the standpoint of the rate or amount of such tax. Since the stock planed away in dressing the lumber is not actually imported, it must be considered that the rate of tax on the lumber imported would be increased proportionately, or that an exaction equalling the amount that would have been collected on the stock planed away would be made for the privilege of importing planed or dressed lumber, thus increasing the amount of tax or duty payable.

On the day of the signature of the agreement the tax imposed on planed or dressed lumber could have been collected *lawfully* only on the net quantity imported. Any statute the purpose of which would be to increase either the rate or amount of the tax would violate the provisions of article IV of the trade agreement as being the imposition of a tax in excess of that required to be imposed on or in connection with importation on the day the agreement was signed, or which was to be later imposed under laws of the United States in force on that day.

Government counsel has further attempted to indicate what the intention of the parties to the trade agreement was by citing expressions of various interested parties given in connection with the passage of section 704 of the Revenue Act of 1938 when it was before Congress. While no doubt these were responsible in large measure for the passage of the latter provision, they cannot be considered as indicating. the intent of the parties to the trade agreement entered into some 3 years before.

There can be no question but that the trade agreement controls over the subsequent enactment of section 704 of the Revenue Act of 1938 since in the latter it was clearly and distinctly provided that the

language added to section 601 (c) (6) of the Revenue Act of 1932 was not to become effective if in conflict with any international obligation of the United States, thereby evidencing the intention of Congress not to abrogate the trade agreement.

There being no dispute as to the facts in this case, for the foregoing reasons the protest is sustained, and judgment will issue accordingly.